**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

**JEFFREY D HART**                                                                                          **PETITIONER**
*ADC #155857*

**V.**                             **CASE NO. 4:20-cv-00167-BRW-JTK**

**DEXTER PAYNE**
*Director, ADC*                                                                                             **RESPONDENT**

## PROPOSED FINDINGS AND RECOMMENDATIONS

### INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Billy Roy Wilson. Any party may serve and file written objections to this recommendation. Objections should be specific and should include the factual or legal basis for the objection. If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection. An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations. The copy will be furnished to the opposing party. Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.   Why the record made before the Magistrate Judge is inadequate.

2.   Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.   The detail of any testimony desired to be introduced at the hearing before

1

the District Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

Clerk, United States District Court

Eastern District of Arkansas

600 West Capitol Avenue, Suite A149

Little Rock, AR 72201-3325

## I.     Introduction

Petitioner Jeffrey Hart is an inmate at Cummins Unit in the Arkansas Department of Corrections ("ADC"). On March 11, 2019, Hart pled guilty to aggravated robbery, possession of a firearm by certain persons, and false imprisonment. *See Doc.* 6-1 at 12-14.[1] He received concurrent 360-month sentences for each charge with 240 months suspended on the false imprisonment charge. *See id.* He waived his right to a direct appeal in his plea agreement, and he never sought postconviction relief in state court. *See Doc.* 28-4 at 2; *Doc.* 2 at 2-3. Hart now files this petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 alleging, 1) the State withheld evidence, 2) his first two lawyers provided ineffective assistance of counsel, 3) the State lied and falsified documents, 4) the State lied about the county on a transcript of his plea hearing, 5) the State coerced a witness, 6) his sentence is illegal because he is not a habitual offender under A.C.A. § 5-4-501(b), 7) he was not taking his medication and under the influence of K2 at the time he pled

---

[1] The italicized "*Doc.*" refers to the docket number entry in the Court's electronic filing system for this case. The Court will cite to the docket number entries rather than the title of each filing.

2

guilty, and 8) the State did not have a proper search warrant. *See Doc.* 2 at 5-10, 18, 102.

## II.     Notice Pleading

To begin, some of Hart's claims are insufficiently pleaded. Rule 2(c) of the Rules Governing Section 2254 Cases in the United States District Courts ("Rules Governing § 2254 Cases") provides that a habeas petition must "specify all the grounds for relief available to the petitioner" and "state the facts supporting each ground." Rule 2(c), Rules Governing § 2254 Cases. This standard is more demanding than the rule against notice pleading in other civil cases. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). "[I]n order to substantially comply with the Section 2254 Rule 2(c), a petitioner must state specific, particularized facts which entitle him or her to habeas corpus relief for each ground specified." *Adams v. Armontrout*, 897 F.2d 332, 334 (8th Cir. 1990). Hart's *Brady* and ineffective assistance of counsel claims fail because they are conclusory statements not supported by any facts. *See* Rule 2(c), Rules Governing § 2254 Cases; *see also Adams*, 897 F.2d at 334.

### a.   *Brady* Claim

In ground one, Hart states "there was [a lot] of evidence [withheld] in my case if you see attachments… my lawyer filed for motion of discovery and you'll see he [asked] for everything and they didn't give it to us." *Doc.* 2 at 5. Hart attaches a copy of his lawyer's discovery request in his petition. *See id.* at 20-27. Hart also attaches the prosecuting attorney's response to this discovery request which says their office has an open file policy. *See id.* at 29. Beyond that, Hart fails to allege what, if anything, the State withheld, let alone whether that withheld evidence was *Brady* material. Since Hart does not state any facts supporting his *Brady* claim, his claim is insufficiently pleaded. *See* Rule 2(c), Rules Governing § 2254 Cases; *see also Adams*, 897 F.2d at 334. This claim should be dismissed without prejudice.

### b. Ineffective Assistance of Counsel Claim

In ground three, Hart says "the first two lawyers [he] had never did nothing to help [him]." *Doc.* 2 at 8. Beyond that, Hart does not specify what his first two lawyers did or failed to do that resulted in a violation of his right to effective assistance of counsel. Since Hart does not state any facts supporting his ineffective assistance of counsel claim, this claim is also insufficiently pleaded. *See* Rule 2(c), Rules Governing § 2254 Cases; *see also Adams*, 897 F.2d at 334. This claim should be dismissed without prejudice.

### III.   Procedural Default

Hart's remaining claims are 1) the State lied and falsified documents,[2] 2) the State lied about the county on a transcript of his plea hearing,  3) the State coerced a witness, 4) his sentence is illegal because he is not a habitual offender under A.C.A. § 5-4-501(b), 5) he was not taking his medication and under the influence of K2 at the time he pled guilty, and 6) the State did not have a proper search warrant. *See Doc.* 2 at 5-10, 18, 102.

Before seeking federal habeas review, a state prisoner must first "exhaus[t] the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A). This affords state courts "the first opportunity to address and correct alleged violations of [the] prisoner's federal rights." *Coleman v. Thompson*, 501 U.S. 722, 731 (1991). A habeas petitioner who cannot present his federal claims in state court due to untimeliness or some other state procedural hurdle meets the technical requirements for exhaustion because there are no longer any state remedies available to him. *Grass*

---

[2] Hart does not specify what the State lied about or which documents it falsified in his petition, but he includes documents from the underlying proceedings with his own handwritten notes as exhibits. In some cases, Hart points to what appear to be recordkeeping errors. *See e.g.*, *Doc.* 2 at 63 ("Two counts one victim who is the other victim? And How do you get too [*sic*] counts of False Imprisonments 1st Degree if there's only one victim?"); *Doc.* 17 at 3 ("They said [I] robbed the Store on 12-4-2019 that's two Different Dates. How is that possible?"). In other cases, Hart disputes the integrity of the documents filed by the Government. *See e.g.*, *Doc.* 29 at 4 ("I didn't sign this nor did my attorney. Proof that [they're falsifying] document[s]"); *Doc.* 29 at 11, 12 ("Not a Real Signature… Two Different Signatures.").

*v. Reitz*, 643 F.3d 579, 584 (8th Cir. 2011) (citing *Coleman*, 501 U.S. at 732). However, "we ask not only whether a prisoner has exhausted his state remedies, but also whether he has properly exhausted those remedies, i.e., whether he has fairly presented his claims to the state courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). To meet this fair presentation requirement, "state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *Id.* at 845. "A failure to exhaust remedies properly in accordance with state procedure results in procedural default of the prisoner's claims." *Welch v. Lund*, 616 F.3d 756, 758 (8th Cir. 2010) (citing *O'Sullivan*, 526 U.S. at 848).

Generally, under Arkansas law, all grounds for post-conviction relief are to be brought in a Rule 37 petition. *See* Ark. R. Crim. P. 37.1(a). Hart concedes he never filed a Rule 37 Petition alleging any of these claims. *See Doc.* 2 at 2-3. His time to do so has since passed. Hart had 90 days from the date of entry of Judgment to bring his claims under Rule 37. *See* Ark. R. Crim. P. 37.2(c). He was sentenced on March 11, 2019, and his sentencing order was filed on March 21, 2019. *See Doc.* 6-1 at 38-40. Therefore, his window to file a Rule 37 Petition expired on June 19, 2019. Since Hart did not fairly present these claims in state postconviction proceedings, they are procedurally defaulted. *See O'Sullivan*, 526 U.S. at 848.

**IV.    Excuse for Procedural Default**

When there is a procedural default, federal habeas review of the claim is barred unless the petitioner can demonstrate "cause" for the default and "actual prejudice" as a result of the alleged violation of federal law, or demonstrate that failure to consider his claim will result in a fundamental miscarriage of justice.[3] *Coleman*, 501 U.S. at 750. Cause is established when "some

---

[3] Hart cannot establish a miscarriage of justice because he has not presented new evidence. *See Osborne v. Purkett*, 411 F.3d 911, 920 (8th Cir. 2005) (petitioner "must first come forward with 'new' evidence,… and then he must

objective factor external to the defense impede[s] [petitioner's] efforts to comply with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488 (1986). In his petition, Hart attempts to establish cause for his failure to exhaust state remedies by claiming he "didn't have all [his] paperwork during the time and [he] was getting back stable on [his] medication." *Doc.* 2 at 5.

### a. Cause and Prejudice

#### i. Lack of Paperwork

Hart's first excuse for his failure to exhaust state remedies is that he "didn't have all [his] paperwork during the time." *Doc.* 2 at 5. It is unclear what paperwork Hart is referring to and how not having it prevented him from pursuing a Rule 37 Petition. To the extent Hart argues he did not have all the documents from the underlying proceedings, he has failed to allege how not having these documents prevented him from filing a Rule 37 Petition. *See Murray*, 477 U.S. at 488. Hart's claim that he did not have his paperwork does not excuse his procedural default.

#### ii. Mental Health

Hart's second excuse for his failure to exhaust is that "[he] was getting back stable on [his] medication." *Doc.* 2 at 5. A petitioner can establish cause and prejudice by showing that their mental health interfered with their ability to pursue postconviction relief:

> Our cases establish that, in order for mental illness to constitute cause and prejudice to excuse procedural default, there must be a conclusive showing that mental illness interfered with a petitioner's ability to appreciate his or her position and make rational decisions regarding his or her case at the time during which he or she should have pursued post-conviction relief… Mental illness prejudices a petitioner if it interferes with or impedes his or her ability to comply with state procedural requirements, such as pursuing post-conviction relief within a specific time period.

*Holt v. Bowersox*, 191 F.3d 970, 974 (8th Cir. 1999) (cleaned up).

In *Bowersox*, the petitioner had schizoaffective disorder, reported experiencing delusions,

---

show that 'it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.'") (citations omitted).

6

and "was not oriented to time, place, or date" when he was first incarcerated. *See id.* at 972. The district court denied the petition on the basis that petitioner could not establish cause and prejudice due to mental health since he was competent before trial. *See id.* at 973. The Eighth Circuit remanded the case since the relevant period for analyzing petitioner's mental competency was the timeframe in which he could have sought post-conviction relief, and there was evidence that petitioner was incapable of making rational decisions during that timeframe. *See id.* at 974-75.

As discussed above, the relevant timeframe for Hart is March 21, 2019 to June 19, 2019 because that is the time during which he could have filed his Rule 37 Petition. *See Doc.* 6-1 at 38-40; Ark. R. Crim. P. 37.2(c). In support of his claim that his mental health kept him from filing for state postconviction relief, Hart includes his April 9, 2019 ADC Mental Health Services Treatment Plan. *See Doc.* 2 at 63-64. After a psychiatric evaluation, Hart was diagnosed with "Cannabis Use Disorder;… Unspecified Schizophrenia Spectrum and other Psychotic Disorder;… [and] Antisocial Personality Disorder." *Id.* According to the plan, Hart's first goal was "Pro-social Behavior" and his problem behavior was "experienc[ing] Non-Reality Based Mentation." *Id.* at 64. His objective was "to reduce verbalizations that have unusual, bizarre, or irrational content." *Id.* The second stated goal was "Medication Compliance," and the problem behavior was that Hart "experience[d] symptoms that require routine Mental Health medication." *Id.* at 64-65. Accordingly, he was prescribed Haloperidol ("Haldol") once daily and his objective was to "take medication as prescribed in the next 180 days" and "attend 6 Case Management sessions for monitoring of therapeutic effects of medications in the next 180 days." *Id.* at 63, 65.

On July 23, 2020, this Court requested additional information from Respondent including Hart's compliance with his medication and treatment plan and reports from Hart's case management sessions. *See Doc.* 24. The medication compliance records show that in the first week

of Hart's Haldol prescription, he refused his medication three times and accepted it four times. *See Doc.* 28-1 at 18. For the next two months, Hart only showed up twice more to receive his medication and was marked as a "no show" for every other day. *See id.* at 18-21.

During this two-month timeframe, Hart attended a Monthly Case Management on May 23, 2019. *See Doc.* 28-2 at 9. The report on this session says,

> [Hart] reported no issues or concerns. He has reported that he is not taking his medication. He stated, 'I don't need it. I was acting crazy before, but it is because I used to use a whole lot of K2 and I was just high on that. Taking meds and seeing Mental Health gives me restrictions and limits me on the jobs I can have. I have a lot of time left and want to be productive. I have mood swings sometimes, but I know how to go to someone level headed and they help me keep my head straight. I haven't been into any trouble and I haven't taken the medicine.'

*Id.*

During this encounter, the licensed clinical social worker, Jennifer Key, made the following observations:

> Inmate presented with euthymic mood. He was alert, talkative, and polite. He was interactive with a pleasant demeanor. He maintained appropriate eye-contact and was on-topic during visit. He was oriented x4. His thought processes were logical, coherent, and goal directed. He was well-kempt and displayed no apparent signs of mental health distress.

*Id.*

Based on Hart's self-assessment and her observations, Key made the following assessment:

> Current mental status appears to be within normal limits. He appeared to be coping and functioning well. No signs of suicidal ideation, intent, or plan are noted at this time. Emars [ADC's medication compliance tracker] indicates that he is grossly non-compliant. He did not appear to be responding to any internal stimuli and no delusional thought patterns were elicited. He is asking to be PRN'd.

*Id.*

Two weeks later, Hart had another Case Management session where he again reported no issues and repeated his reasoning for not taking his medication. *See Id.* at 8. The report says,

> He reported no issues or concerns. He stated, 'I'm not taking the medicine. I want a good

8

> job. I don't want it to hold me back and I can control my problems with things pretty well. I'm doing fine.'

*Id.*

Key's observations and assessment were largely the same as the previous session:

> Inmate presented with euthymic mood. He was alert, talkative, and polite. He was interactive with a pleasant demeanor. He maintained appropriate eye-contact and was on-topic during visit. He was oriented x4. His thought processes were logical, coherent, and goal directed. He was well-kempt and displayed no apparent signs of mental health distress.
> …
> Current mental status appears to be within normal limits. He appeared to be coping and functioning well. No signs of suicidal ideation, intent, or plan are noted at this time. Emars indicates that he is grossly non-compliant.

*Id.*

Hart's general failure to show up to receive his prescribed medication undercuts his claim that he was stabilizing on Haldol during this window. *See Doc.* 28-1 at 18-21. Nevertheless, even when he acknowledged that he stopped taking his prescription during two separate case management sessions, neither Hart nor Key, the attending clinical social worker, reported any behavioral or mental issues. *Doc.* 28-2 at 8, 9. These sessions show that Hart maintained logical thought processes during the timeframe when he could have filed a timely Rule 37 Petition. *See id.* Thus, Hart has failed to show that any mental illness from which he suffered between March 21, 2019 and June 19, 2019 interfered with "[his] ability to appreciate [his] position and make rational decisions regarding [his] case." *Bowersox*, 191 F.3d at 974. His mental health cannot excuse his procedural default on these claims, so they should be dismissed with prejudice.

## V.     **Certificate of Appealability**

Under Rule 11 of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability when entering a final order adverse to a petitioner. The question is whether "reasonable jurists could debate whether (or, for that matter, agree that) the petition should

have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Hart has not made a substantial showing of a denial of a constitutional right, so no certificate will issue.

**VI.    Conclusion**

IT IS THEREFORE RECOMMENDED that:

1) Petitioner Jeffrey Hart's Petition for Writ of Habeas Corpus (*Doc.* 2) be DENIED.

2) Hart's *Brady* and Ineffective Assistance of Counsel claims be DISMISSED WITHOUT PREJUDICE.

3) The remainder of Hart's claims be DISMISSED WITH PREJUDICE.

4) A Certificate of Appealability be DENIED. *See* 28 U.S.C. § 2253(c)(1)-(2); Rule 11(a), Rules Governing § 2254 Cases in United States District Courts.

IT IS SO RECOMMENDED this 8th day of October, 2020.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE